IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MACK MANDRELL LOYDE, | ) |
| Plaintiff, | ) NO. 3:20-cv-00710 |
| v. | ) JUDGE RICHARDSON |
| TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is the motion for summary judgment filed by Defendants Elliot Garrett and Brooke Edwards (Doc. No. 81, "Motion"). Defendants filed a memorandum in support of the Motion (Doc. No. 82). Plaintiff filed a Response (Doc. No. 90), and Defendants filed a Reply. (Doc. No. 94).

For the reasons discussed herein, the Court will grant Defendants' Motion.

## BACKGROUND

A. Factual Background[1]

Plaintiff, Mack Mandrell Loyde, is an inmate with Tennessee Department of Corrections ("TDOC"). During the relevant timeframe, Plaintiff was receiving psychiatric health services provided to him by Defendant Tehum Health Services, Inc. d/b/a Corizon Health, Inc. (hereinafter "Corizon") through a contract with TDOC. One of Corizon's employees, Defendant Carolynn

---

[1] The facts set forth in the first paragraph in this section are undisputed for the purposes of the Motion. As to the second paragraph, the (alleged) facts to which Plaintiff testified are not necessarily undisputed.

Kolesnikoff, provided care and treatment to TDOC inmates, including Plaintiff, housed in Unit 7A at the Lois DeBerry facility. Kolesnikoff began a sexual relationship with Plaintiff in August 2019.

Plaintiff testified that he repeatedly told staff members that he wanted to make a Prison Rape Elimination Act ("PREA") complaint against a staff member but was ignored.[2] (Doc. No. 89-2 at 7).[3] He testified that he filed numerous grievances about this issue but never received any response. Plaintiff further testified that Defendant Elliot Garrett, the behavioral administrator employed by Corizon at the relevant time, dismissed Plaintiff's complaint by commenting that Plaintiff was "reliving his past." Defendant Brooke Edwards was the grievance chairperson at Corizon during the relevant timeframe.

B. <u>Procedural Posture</u>

Plaintiff filed a Complaint against Corizon, Kolesnikoff, Garrett, and Edwards, as well as Defendants Keisha Bean, Molly O'Toole, and Christopher Smith. The claims against Bean, Corizon, and O'Toole have since been stayed. (Doc. No. 108), and Smith has since been dismissed. (Doc. No. 102).

Plaintiff asserts three claims under 42 U.S.C. § 1983. In Count I, Plaintiff claims that Kolesnikoff violated his Eighth Amendment rights by engaging in unlawful sexual conduct with him. (Doc. No. 1 at 8). In Count II, Plaintiff alleges that Corizon, O'Toole, Bean, Garrett, and Edwards (and the now-dismissed Smith) violated his Eighth Amendment rights by failing to protect him from Kolesnikoff's alleged sexual abuse. (Doc. No. 1 at 9). In Count III, Plaintiff

---

[2] The fact that Plaintiff so testified, but not necessarily the underlying facts, is undisputed.

[3] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of ___") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

alleges that Corizon negligently hired and supervised Kolesnikoff. (Doc. No. 1 at 9-10). Plaintiff seeks compensatory and punitive damages and costs of litigation. (Doc. No. 1 at 10-11). Via the Motion, Garrett and Edwards (hereafter, collectively, "Defendants") seek summary judgment regarding the sole claim against them, namely the Count II failure-to-protect claim. (Doc. No. 81 at 1).

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir.

2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.[4]

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility

---

[4] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 536-37 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## DISCUSSION

Defendants raise two grounds for summary judgment: (1) Plaintiff has not met the exhaustion requirements established in the Prison Litigation Reform Act; and (2) Plaintiff cannot establish that Defendants violated his Eighth Amendment rights. (Doc. No. 81 at 1). The Court addresses each of these two arguments in turn.

A. PLRA exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires prisoners to exhaust all available administrative remedies prior to filing suit under § 1983. *See* 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion requires not only the initial filing of a grievance and response, but also the exhaustion of any appeal procedures. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Exhaustion of established PREA remedies qualifies as exhaustion under the PLRA. "Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). *Accord*, *Napier v. Laurel Cnty., Ky.,* 636 F.3d 218, 225 (6th Cir. 2011). "Because the Defendants bear the burden of proof on exhaustion, they bear an initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion and that no reasonable jury would be free to disbelieve it." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citations and quotations omitted).

Tennessee has given the TDOC exclusive authority to establish the grievance procedures available for inmates. *See* Tenn. Code Ann. § 41-21-817. Importantly, regulations promulgated pursuant to PREA allows states both to determine their own respective reporting procedures in sexual abuse cases and to create a grievance process, applicable only to situations specifically implicated by PREA, that is more easily completed (thereby satisfying exhaustion requirements) than the grievance process that otherwise would be applicable. 28 C.F.R. § 115.151. Tennessee has done just that—via TDOC Rule #502.06.2,[5] which was promulgated "[t]o establish . . . reporting procedures . . . regarding Prison Rape Elimination Act (PREA) investigations[.]" TDOC Rule #502.06.2(II). The Rule states that reporting (which, viewed in context, clearly includes wholly oral reporting)[6] directly to staff shall be available and that verbal reports must be

---

[5] A copy of this Rule (including the attachments thereto) is contained in the record at Doc. No. 83-3.

[6] Section VI(B)(1) of the Rule provides as follows:

documented. (Doc. No. 83-3 at 3-4). Calling a PREA tip line must also be available. (*Id.* at 4). No appeal process is mentioned in the TDOC rules. And pursuant to federal regulation, if an inmate does not receive a response to his or her PREA complaint within the time allotted by agency to respond, that non-response is properly considered a denial. 28 C.F.R. § 115.52(d)(4).

Defendants do not rely upon the notion that the allotted time has not elapsed for it to respond to a PREA complaint from Plaintiff. Instead, they argue that Plaintiff has never filed a proper, relevant PREA complaint. Specifically, Defendants argue that PLRA exhaustion requirement is unsatisfied because Plaintiff "has not filed any grievances in accordance with the procedures set forth in the applicable TDOC policy [and] Plaintiff never filed a grievance related to his sexual contact with Kolesnikoff." (Doc. No. 82 at 6).

However, Tennessee inmates (like Plaintiff) can satisfy PLRA exhaustion by making an oral PREA complaint. If that oral complaint is not taken seriously, naturally there well may not be any follow-up documentation, and the lack of documentation means neither that the verbal complaint was not made nor that the complaint was insufficient merely because it was oral. Plaintiff does not, as Defendants suggest, need to file a written complaint to satisfy Tennessee's policy and the PREA.

---

The Department shall provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to an incident of sexual abuse. These include but are not limited to:
      a. Reporting directly to staff
      b. Facility PREA Tip Line
      c. Third-party reporting
      d. Written communication

(Doc. No. 83-3 at 3).

Throughout Plaintiff's deposition, he discusses in depth how he attempted to make an oral PREA complaint but was rebuffed. (Doc. No. 83-1 at 12). A reasonable factfinder could find that Plaintiff attempted to make a PREA complaint consistent with Tennessee's procedures, which would suffice for exhaustion. At the summary judgment stage, Plaintiff's testimony alone can suffice to create a genuine dispute. *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022) ("Indeed, a prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment on exhaustion even if the record lacks corroborating evidence.").

Thus, Defendants have not met their burden in showing that no reasonable factfinder could find that Plaintiff did not meet the exhaustion requirement under the PLRA.[7]

B. <u>Eighth Amendment failure to protect</u>

The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials have an Eighth-Amendment duty to protect a prisoner from other prison staff who are causing the inmate substantial harm. *See Harper v. Novak*, No. 20-CV-592-JDP, 2020 WL 6874584, at *4 (W.D. Wis. Sept. 28, 2020) (quoting *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018)). When an inmate suffers repeated sexual harassment that causes an inmate significant distress, the inmate has been subjected to cruel and unusual punishment in violation of the Eight Amendment. *See id.* (quoting *Schwenk v. Hartford*, 204 F.3d

---

[7] Even if the Court had found otherwise, a court's "[g]ranting [of] summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice." *Bates v. Washington*, No. 5:21-CV-11040, 2022 WL 19829443, at *2 (E.D. Mich. Dec. 13, 2022) (citing *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006)), *report and recommendation adopted*, No. 21-CV-11040, 2023 WL 3095553 (E.D. Mich. Apr. 26, 2023). Like the court in *Bates*, other courts certainly do speak in terms of granting "summary judgment" based on a plaintiff's failure to exhaust as required by the PLRA. *See*, e.g., *Napier.*, 636 F.3d at 225. But as noted in *Bates*, any so-called "summary judgment" operates instead like a dismissal without prejudice, contrary to a typical summary judgment (which would be a decision on the merits and thus with prejudice). But in any event, Defendant is not entitled to any relief, however it may be characterized, based on Plaintiff's alleged failure to exhaust.

1187, 1197 (9th Cir. 2000)). But even when that is the case, the question remains, who all is legally responsible for such violation?

A prison official violates an inmate's rights only if the official is "deliberate[ly] indifferen[t] to inmate health or safety[.]" *Id.* (internal quotation marks and citation omitted). A failure-to-protect claim under the Eighth Amendment, therefore, has an objective component and a subjective component. *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018). Both the subjective and objective elements must be satisfied for Plaintiff to succeed in such a claim.

   1. *Objective*

"For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Defendants argue that the sexual relationship between Plaintiff and Kolesnikoff did not involve rape and was consensual, and therefore it does not constitute serious harm. (Doc. No. 82 at 9). They point to Plaintiff never instructing Kolesnikoff not to come see him or telling her that he did not desire a sexual relationship with her, which is undisputed. (Doc. No. 91 at 6 ¶ 13).

When a defendant claims that the sexual conduct was consensual, the defendant must overcome the presumption that prisoners are unable to give consent due to "the coercive nature of sexual relations in the prison environment." *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087, 1096 (6th Cir. 2019) (quoting *Wood v. Beauclair*, 692 F.3d 1041, 1047–49 (9th Cir. 2012)). This presumption of non-consent is not overcome merely because Plaintiff did not tell Kolesnikoff to stop seeing him. The coercive prison environment presumptively would prevent a plaintiff from instructing a corrections employee to stop their conduct. In this case, Plaintiff stated that he "felt like in a sense I really didn't have no choice" given that (according to Plaintiff) he felt that she was "the only person [he] could turn to at the time that could help [him]" with issues such as

childhood trauma. (Doc. No. 89-2 at 10-12). This testimony is sufficient to raise a genuine dispute regarding the existence of consent. *Rafferty*, 915 F.3d at 1096 (deeming the plaintiff's testimony that she complied only because the corrections-officer defendant 'intimidated' her sufficient by itself to establish a genuine dispute as to whether she consented to sexual conduct, because "[a]t [the summary-judgment] stage, the Court must view the evidence in the light most favorable to [the plaintiff].")

Thus, Plaintiff has demonstrated that a reasonable jury could find that there were conditions posing a substantial risk of serious harm, so as to meet the objective requirement for this claim.

2. *Subjective*

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838 (emphasis added). "The failure to alleviate a significant risk that an officer 'should have perceived but did not' is insufficient for a claim of deliberate indifference, but such subjective knowledge may be inferred from the fact that a pretrial detainee's 'substantial risk' of harm was 'obvious.'" *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 483 (6th Cir. 2020) (citing *Farmer*, 511 U.S. at 838).

a. Defendant Garrett

Plaintiff testified that he told Garrett that he had a PREA issue. "I went to Mr. Garrett and told him I needed to speak with you about a PREA situation involving myself and Kolesnikoff." (Doc. No. 89-2 at 28). Plaintiff's testified, "Once I said PREA, regardless of if he felt like I was

lying or he felt like it was something else." (*Id.* at 29). The Court is unable to determine what Plaintiff meant via this incomplete sentence. Plaintiff immediately thereafter testified, "When I said PREA he should have taken it seriously. All PREA incidents are supposed to be taken seriously." *Id.* Plaintiff's apparent implication here is that, at least in his (Plaintiff's) view, Garrett did not take it seriously. The basis for this implication is apparent from Plaintiff's testimony given just moments earlier, when Plaintiff described in more detail the exchange between him and Garrett. He first described the exchange as follows:

> I said I need to speak with you about a PREA situation involving myself and Kolesnikoff· I need to talk to you. And he's like he didn't want to hear it. He was like, Man, some people -- he said, Some people tend to relive their past.· He said you need to stop doing that and he left.

(*Id.* at 26). He then described the exchange as follows:

> There were people around so I said it, it was plain. I need to speak to you about a situation involving myself and Kolesnikoff, a PREA situation. It's important, I need to speak to you. And he replied some people tend to relive their past, you need to stop doing that, and he left.

(*Id.* at 26-27). In Plaintiff's telling, it is clear that (through no fault of his own but rather through the dereliction of duty of Garrett in walking away) he was unable to get any farther—*i.e.*, that he did not get far enough to describe to Garrett anything about the alleged "PREA situation" involving Kolesnikoff, and certainly did not get far enough to substantiate that there actually was such a situation or explain what exactly the situation was. (Doc. No. 89-2 at 25-26).

Plaintiff's own testimony indicates Garrett did not believe that there was risk of substantial harm. (*Id.* at 26). That is, Plaintiff's testimony indicates that Garrett did not actually draw the inference that there was a risk of substantial harm, even if he should have. Notably, Plaintiff does not claim, and the circumstances do not suggest, that Garrett actually perceived such a risk but merely feigned a lack of such perception. (*Id.*) Therefore, Defendants have met their burden in

showing that Garrett did not have the requisite subjective knowledge of harm at the time Plaintiff made his alleged verbal report to Garrett. To be clear, the Court does not condone Garrett's alleged handling of Plaintiff's report and realizes that if in fact Garrett received the report, he should have eschewed playing amateur psychologist and should instead have responded pursuant to TDOC's prescribed procedures. But although the facts (regarding this exchange) alleged by Plaintiff in his testimony suffice to establish that Garrett was callous and negligent in his handling of the complaint, they completely fail to suggest that Garrett subjectively perceived a risk of subjective harm as required for Plaintiff to prevail—and it makes no difference that the facts recounted by Plaintiff tend to suggest that Garrett objectively *should* have perceived such a risk.

Plaintiff also argues that another inmate made outbursts that put another TDOC official, Bean, on notice about the sexual relationship between Plaintiff and Kolesnikoff. (Doc. No. 90 at 11). Without citing to the record, Plaintiff asserts that "Defendant Bean claims that she would have told Defendant Garrett about these concerns." (*Id.* at 12). Left to fend for itself to search for the purported support (which the Court actually is not required to do), the Court has found where Plaintiff, in paragraph 26 of his response to Defendant's statement of material facts in support of the Motion, asserts, "Defendant Bean also testified that she told Defendant Garrett about certain issues with Defendant Kolesnikoff and Mr. Loyde." (Doc. No. 91 at 11) (citing paragraph four of his response to Defendant's statement of material facts and the deposition of Bean at p. 98, ln. 2 - p. 99, ln. 5). But paragraph four does not support the quoted proposition, and the cited deposition testimony of Bean is not conclusive as to whether she actually told Garrett, as opposed to merely *likely would have* conveyed some concerns to regarding issues concerning Plaintiff and Kolesnikoff. But even assuming arguendo that Bean did so, the record does not reflect evidence

that Bean would have conveyed concerns information about sexual activity between Plaintiff and Kolesnikoff

First, it is unclear that Bean herself knew of any risk of sexual abuse based on the inmate's outburst, only that Kolensikoff had been off unit. (Doc. No. 92-3 at 6, 12). Bean testified that "I wouldn't necessarily have had to tell shift command that somebody went off the unit. I would have notified shift command if it was something PREA related or concern." (*Id.* at 16). No PREA investigation was made due to this incident. (Doc. No. 92-4 at 6). The fact that Bean did not notify shift command indicates she did not perceive a PREA issue. Additionally, Bean testified that she warned Kolesnikoff only against visiting with inmates, not against sexual activity. (Doc. No. 92-3 at 12). Kolesnikoff never told Bean that she was having a sexual relationship with Plaintiff, as evidenced by Kolesnikoff's testimony. (Doc. No. 92-1 at 9-10). Plaintiff does not dispute this. (Doc. No. 90 at 4).

Second, none of Bean's communication to Garrett indicated any sexual relationship. Bean's testimony indicates that she sent a "supervisor's note" that reported Kolesnikoff merely going off unit, nothing more. (Doc. No. 92-3 at 12-13). Bean also testified that she likely mentioned to Garrett a need to meet with Kolesnikoff regarding a violation of the general rule not to go off unit, but not about sexual activity. *Id.* at 15.

Third, Garrett testified that no Corizon employees told him about a sexual relationship between Kolesnikoff and Plaintiff. (Doc. No. 92-6 at 6).

In summary, the record lacks evidence that Bean knew about sexual activity between Plaintiff and Kolesnikoff. But even if Bean did know about such a sexual relationship, the record lacks evidence that she told Garrett about it.

Additionally, Plaintiff has the same problem mentioned above. That is, especially given Garrett's above-referenced attitude about such matters, there is no reason to believe that Garrett actually would have inferred from such expression a risk of substantial harm.

No reasonable jury could find that Garrett both was aware of the underlying facts objectively establishing there was a substantial risk of serious harm to Plaintiff and actually subjectively perceived that Plaintiff was at risk of serious harm.

b.  Defendant Edwards

The only evidence of Edwards having knowledge of the facts underlying Plaintiff's claim is Plaintiff's testimony that he filed PREA complaints about Kolesnikoff to some staff members that disappeared, from which Plaintiff asserts "[i]t is a reasonable inference that Edwards would have received at least one of [Plaintiff']s grievances containing the PREA allegations" because Edwards is the grievance officer. (Doc. No. 91 at ¶ 25); (Doc. No. 89-2 at 5). Edwards testified that she never received any information that would cause her to believe that Kolesnikoff had sex with anyone. (Doc. No. 83-5 at 6).

On this record, there is no evidence that Edwards ever received a PREA complaint detailing the situation with Kolesnikoff. There was no documentation of such a complaint despite there being documentation of another complaint and documentation of all complaints being required by TDOC Rule #502.06.2. (Doc. No. 83-3 at 4). Plaintiff's explanation for this discrepancy is that the documentation "[d]isappeared." (Doc. No. 89-2 at 5). Because Plaintiff never gave a relevant complaint directly to Edwards, the PREA complaints may have disappeared prior to Edwards ever seeing it. It may have been other staff members who improperly dismissed Plaintiff's complaints. Plaintiff supplies no details as to what his PREA complaints stated. Even if a complaint made it to Edwards, she may have subjectively not thought there was a substantial risk of serious harm. It

would be consistent with Plaintiff's narrative that his complaints were brushed off because they were thought to be non-serious.

Ultimately, Plaintiff has not provided grounds for a reasonably jury to conclude that Edwards was subjectively aware of a substantial risk of harm to Plaintiff. The assertion that Edwards should or "would" have received a written complaint had one been filed gets Plaintiff nowhere because there is no evidence that a written complaint, if indeed it ever existed, was in the pipeline long enough even to make it to Edwards. The Court declines to hold that a public official, by agreeing as part of his or her job duties to be the receiver of particular written documentation, can automatically be found to have received written documentation; furthermore, such a finding is inappropriate when, as here, there is no reason whatsoever to believe (and he or she unambiguously denies under oath) that he or she received particular written documents beyond the assumption that he or she "would" have received the documentation because they were "supposed" to receive it based on their job duties. Such a holding would unfairly set up such official for personal liability based on the failings of others who are supposed to transmit the documentation to him or her.

Defendants have established a lack of evidence that Edwards knew of facts objectively suggesting a substantial risk of serious harm, let alone subjectively inferred from those facts a substantial risk of serious harm. Therefore, a reasonable jury could not find in Plaintiff's favor with respect to Edwards.

## CONCLUSION

For the reasons discussed herein, the Court will grant Defendants' motion for summary judgment (Doc. No. 81). An appropriate accompanying order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE