IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MACK MANDRELL LOYDE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:20-cv-00710 ) |
| TEHUM CARE SERVICES, INC., d/b/a CORIZON HEALTH, INC., et. al., | ) JUDGE RICHARDSON ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Mack Mandrell Loyde's Motion to Alter or Amend Judgment under Rule 59(e) of the Federal Rules of Civil Procedure. (Doc. No. 112, "Motion"). Plaintiff moves the Court to alter or amend its September 25, 2023 Judgment (Doc. Nos. 109, 110), granting summary judgment in favor of Defendant Elliott Garrett. In the alternative, Plaintiff seeks the Court's permission to file an interlocutory appeal under 28 U.S.C. § 1292(b) (Doc. No. 112-1 at 8). Defendant Garrett filed a Response to Plaintiff's Motion (Doc. No. 113). Plaintiff did not file a Reply. For the reasons set forth in this Memorandum Opinion, Plaintiff's Motion to Alter or Amend Judgment (Doc. No. 112), and his alternative request to file an interlocutory appeal under 28 U.S.C. § 1292(b), will be **DENIED**.

## BACKGROUND

The Court, in its September 25, 2023 Memorandum Opinion, discussed the relevant facts of this case. (*See* Doc. No. 109 at 1). It will, therefore, recount only some of those facts here for context and as they relate to Plaintiff's lone claim against Defendant Garrett.

Plaintiff is a prisoner in the custody of the Tennessee Department of Correction ("TDOC"). (Doc. No. 1 ¶ 1). In 2019, he was housed at DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee, which is managed by TDOC. (*Id*.; Doc. No. 91 at 1). At that time, Defendant Tehum Health Services, Inc. d/b/a/ Corizon Health, Inc. (hereinafter "Defendant Corizon") worked under contract with TDOC to provide mental health services to prisoners at DSNF. (Doc. No. 1 at 2). Defendant Carolyn Kolesnikoff, an employee of Defendant Corizon, provided mental health counseling to Plaintiff while he was housed at DSNF. (Doc. No. 91 at 1). In August of 2019, Defendant Kolesnikoff and Plaintiff's relationship became sexual. (*Id*.). [1]

On August 20, 2020, Plaintiff filed suit against Defendants Corizon and Kolesnikoff, as well as other Corizon employees—Defendants Garrett, Molly O'Toole, Keisha Bean, Chris Smith—and a TDOC corrections officer, Defendant Brooke Edwards. (Doc. No. 1 at 1–3). Plaintiff, in relevant part, brought a failure-to-protect claim against Defendant Garrett in his individual capacity, asserting that Defendant Garrett violated Plaintiff's Eighth Amendment right to be free from unlawful sexual conduct by a correctional employee. (*Id*. at 9). According to Plaintiff, Defendant Garrett was "aware of the excessive risk that Defendant Kolesnikoff posed to" him and that he "deliberately disregarded that excessive risk." (*Id*.).

On July 1, 2022, Defendant Garrett, through counsel, filed a motion for summary judgment. (Doc. No. 82). Defendant Garrett argued that he was entitled to judgment as a matter of law because, pursuant to *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), based on facts not genuinely in dispute Plaintiff could not satisfy either the objective or subjective components to support a failure-to-protect claim under the Eighth Amendment. (*Id*. at 8).

---

[1] The facts recited in this paragraph are undisputed between Plaintiff and Defendant Garrett. (*See* Doc. No. 91 (Plaintiff's Response to Defendant Garrett's Statement of Undisputed Facts)).

On the record before it, the Court found that a genuine issue of material fact existed as to the objective component of Plaintiff's claim. (*See* Doc. No. 109 at 11 ("Plaintiff has demonstrated that a reasonable jury could find that there were conditions posing a substantial risk of serious harm, as to meet the objective requirement of this claim.")). As to the subjective component, however, the Court determined that the evidence was insufficient to establish a genuine issue of material fact. (*Id*. at 14 ("No reasonable jury could find that Garrett . . . actually subjectively perceived that Plaintiff was at risk of serious harm.")). The Court, therefore, granted summary judgment in Defendant Garrett's favor and dismissed Plaintiff's lone claim against him. (Doc. Nos. 109, 110).

## LEGAL STANDARD

A. Rule 59(e)

Rule 59(e) allows a party to file a motion to alter or amend a judgment within twenty-eight days of its entry. Fed. R. Civ. P. 59(e). A court may grant a motion to alter or amend a judgment based on: (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). But because Rule 59(e) motions are "extraordinary" and "contradict[ ] notions of finality and repose[,]" they are "seldom granted." *Mitchell v. Citizens Bank*, No. 3:10-00569, 2011 WL 247421, at *1 (M.D. Tenn. Jan. 26, 2011) (internal quotation marks and citation omitted). A district court has considerable discretion in deciding whether to grant a motion under Rule 59(e). *See Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982) ("The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse." (citations omitted)).

B. 28 U.S.C. § 1292(b)

Regarding interlocutory appeals, the applicable statute provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order[.]

28 U.S.C. § 1292(b)

## DISCUSSION

A. Rule 59(e)

Via the Motion, Plaintiff seeks to alter or amend the Court's September 25, 2023 Judgment because (according to him) the Court "applied the wrong legal standard" in examining the subjective component of his failure-to-protect claim. (Doc. No. 112-1 at 3). Plaintiff does not specify whether he bases his Motion on a purported clear error of law, purported newly discovered evidence, a purported intervening change in controlling law or need to prevent manifest injustice. *GenCorp, Inc.*, 178 F.3d at 834. His statement, however, that the Court applied the wrong standard suggests that he is arguing that the Court committed a clear error of law in applying *Farmer*. (*Id*. at 5–8); *cf. SnagPod, LLC v. Precision Kiosk Techs., Inc.*, No. 23-cv-10401, 2023 WL 8451655, at *3 (E.D. Mich. Dec. 6, 2023) (applying clear-error standard under Rule 59(e) when the plaintiff argued the court "improperly appl[ied]" 17 U.S.C. § 410(c)). The Court, therefore, will consider whether it committed clear error within the meaning of Rule 59(e).

The Court begins its analysis with a recapitulation of the parties' positions set forth at the summary-judgment stage. Defendant Garrett argued that he had no "actual knowledge" of a sexual

relationship between Plaintiff and Defendant Kolesnikoff and that "the evidence unequivocally show[ed] that" he drew no inference that Plaintiff "faced a substantial risk of serious harm." (Doc. No. 82 at 14). Plaintiff, in his response, disagreed with Defendant Garrett's position and offered three reasons why Defendant Garret's claim that he "had no knowledge wa[s] directly contradicted by the evidence." (Doc. No. 90 at 11–12). First, Plaintiff argued that Defendant Garrett "would have at least been informed about" his sexual relationship with Defendant Kolesnikoff due to an outburst from another inmate. (*Id*.). According to Plaintiff, that outburst "included specific accusations that Defendant Kolesnikoff was having a sexual relationship" with him. (*Id*.).[2] "Defendant Bean . . . would have told Defendant Garrett about these concerns," and therefore, Second, Plaintiff argued that Defendant Garrett was "on notice that an improper relationship, sexual or otherwise," existed between Plaintiff and Defendant Kolesnikoff. (*Id*. at 12). Lastly, Plaintiff pointed to his deposition testimony as proof that Defendant Garrett had notice of the relationship because (according to that testimony) he told Defendant Garrett that he "had a PREA situation[] between himself and Defendant Kolesnikoff." (*Id*. at 4, 12).

This Court recited the following standards in evaluating the subjective component of Plaintiff's claim:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. *Farmer*, 511 U.S. at 837-838 (emphasis

---

[2] The record tends to show that the inmate's outburst put another TDOC official, Defendant Bean, on notice of Plaintiff and Defendant Kolesnikoff's relationship.

added). The failure to alleviate a significant risk that an officer "should have perceived but did not" is insufficient for a claim of deliberate indifference, but such subjective knowledge may be inferred from the fact that a pretrial detainee's "substantial risk" of harm was "obvious." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 483 (6th Cir. 2020) (citing *Farmer*, 511 U.S. at 838).

(Doc. No. 109 at 10 (emphasis added)).

Under these standards, the Court disagreed with Plaintiff's position that Defendant Garrett was aware of the relationship between Plaintiff and Defendant Kolesnikoff. The Court explained that the record was unclear as to whether Defendant Bean knew of any risk of sexual abuse based on the inmate's outburst because Defendant Bean's deposition testimony was not conclusive on this point. (*Id*. at 12). In addition, the Court explained that Plaintiff's own deposition testimony indicated that Defendant Garrett "did not believe that there was a risk of substantial harm" and did not suggest that Defendant Garrett actually perceived such a risk and "merely *feigned* a lack of such perception." (*Id*. at 11 (citing Doc. No. 89-2 at 26)) (emphasis added). While acknowledging that Defendant Garrett's handling of Plaintiff's complaint—*i.e.*, that Plaintiff had a PLRA issue between himself and Defendant Kolesnikoff—showed that Defendant Garrett was "callous and negligent[,]" the Court explained that Plaintiff "completely fail[ed] to suggest that [Defendant Garrett] subjectively perceived a risk of subjective harm." (*Id*. at 12). And "that the facts recounted by Plaintiff tend to suggest that [Defendant] Garrett objectively *should* have perceived such a risk" made no difference. (*Id*.). For these reasons, this Court concluded that no genuine issue of material fact existed as to whether Defendant Garrett "actually subjectively perceived that Plaintiff was at risk of serious harm." (*Id.* at 14).

Plaintiff now claims, in his Motion, that the Court applied the wrong legal standard because it examined "Defendant Garrett's 'belief' of whether" Plaintiff's "PREA complaints were true or not" when Plaintiff "is only required to prove that Defendant Garrett had notice of a 'substantial

risk of serious harm[.]'" (Doc. No. 112-1 at 3). That is, according to Plaintiff, he does not need to prove that Defendant Garrett believed that any harm "would actually befall" Plaintiff. (*Id*. at 3–4).

The heart of Plaintiff's arguments centers around *Farmer*. Plaintiff, in particular, homes in on specific language in *Farmer*, which he characterizes as "problematic because it is subject to two different interpretations." (*Id*. at 5). To understand his positions, *Farmer* warrants further discussion.

In *Farmer*, the petitioner, an inmate housed at United States Penitentiary in Terre Haute, Indiana, was beaten and raped by a cellmate. 511 U.S. at 830. The petitioner filed suit against several federal prison officials, alleging that they had violated his Eighth Amendment rights "by their deliberate indifference to petitioner's safety." *Id*. at 830, 839. According to the petitioner, prison officials knew that the penitentiary had a violent environment and a history of inmate assaults. *Id*. at 831. The petitioner further claimed that prison officials also knew that the petitioner, a transexual, would be vulnerable to sexual attacks. *Id*.

The prison officials moved for summary judgment, and the district court granted summary judgment in their favor. *Id*. According to the district court, an inmate must show that prison officials were reckless in a criminal sense, meaning that they had actual knowledge of a potential danger. *Id*. at 832. The petitioner, the district court found, had failed to show that the prison officials had the "requisite knowledge" because the petitioner never voiced any safety concerns to prison officials. *Id.* at 848. The Court of Appeals for the Seventh Circuit summarily affirmed the district court's judgment. *Id*.

The Supreme Court, however, vacated the Court of Appeals' judgment and remanded the case for further proceedings. *Id*. at 824. As an initial matter, the Court noted that the parties did not dispute that a failure-to-prevent-harm claim required an inmate to prove an objective

component and a subjective component. *Id*. at 834. The parties also agreed, the Supreme Court stated, that, "[i]n prison-condition cases," "state of mind is one of deliberate indifference to inmate health or safety." *Id*. (internal quotation marks and citations omitted). The parties, however, disputed the proper test for deliberate indifference, which the *Farmer* Court undertook to define. *Id*.

In defining deliberate indifference, the Supreme Court first addressed "the level of culpability deliberate indifference entails." *Id*. at 836. Deliberate indifference, it explained "entails something more than mere negligence" but something less than "purpose of causing harm or with knowledge that harm will result." *Id*. at 835. In this vein, the *Farmer* Court stated that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id*. at 836. It then rejected the petitioner's invitation to adopt an objective test for deliberate indifference and recited the proper standard for evaluating whether a prison official is subjectively aware of a risk of harm: a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

According to Plaintiff, it is this language—that a prison official "must also draw the inference"— that is "problematic" and is subject to "two different interpretations." (Doc. No. 112-1 at 5). According to Plaintiff, "[o]ne interpretation of this language is to view it as requiring proof that the prison official had to not only receive notice of a substantial risk of serious harm but also 'believe' that harm would result." (*Id*.). This is the view, Plaintiff states, "taken in this Court's ruling." (*Id*.). Plaintiff explains that "an alternative view is that this language only applies to whether the information known by the prison official was sufficient to demonstrate that a

substantial risk of serious harm existed." (*Id*.). Under this view, Plaintiff states that he only needs to prove that the prison official had actual notice of a risk, not that the prison official believed the risk would manifest into some actual harm in the future. (*Id*. at 6).

According to Plaintiff, *Farmer* provided clarity on this issue. (*Id*.). *Farmer*, he states, "made clear that a plaintiff, 'need not show that a prison official acted or failed to act *believing* that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" (*Id*. (emphasis added by Plaintiff) (quoting *Farmer*, 511 U.S. at 842)). Plaintiff maintains, therefore, that "it is the notice of a 'risk of harm' that is significant and not the belief in how likely the harm was to result." (*Id*.).

In response, Defendant Garrett advances several arguments. He argues that Plaintiff's Motion, in the first instance, is procedurally improper because "[a]t best, he seems to disagree with" the Court's ruling. (Doc. No. 113 at 2). As Defendant Garrett argues, Plaintiff's motion does, in some ways, read as a mere disagreement with the Court's ruling and (relatedly) an attempt to reargue his case. For example, Plaintiff devotes most of his Motion to explaining his interpretation of *Farmer*, which Defendant Garrett cited several times in support of his motion for summary judgment—meaning that Plaintiff had ample opportunity, in his response, to discuss his reading of *Farmer* as requiring a prisoner to prove only that a prison official had "notice of a substantial risk of serious harm." (Doc. No. 112-1 at 5). A motion under Rule 59(e), however, "is not a vehicle to reargue . . . or to present evidence which should have been raised in connection with an earlier motion." *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 714 (S.D. Ohio Jan. 16, 2013) (citations omitted).

In other parts of his Motion, Plaintiff appears to rehash other arguments that he advanced unsuccessfully in opposition to Defendant Garrett's motion for summary judgment. In his Motion,

Plaintiff argues, as he did in his response (*see* Doc. No. 90 at 8), that Defendant Garrett was aware of the serious risk of harm to Plaintiff and therefore had a duty to report it to his supervisor. (Doc. No. 112-1 at 7). But again, a motion under Rule 59(e) does not allow a party to "effectively re-argue a case." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (internal quotation marks and citation omitted); *see Johnson v. Bobby*, No. 2:08-cv-55, 2022 WL 1656762, at *9 (S.D. Ohio Mar. 24, 2022) (denying Rule 59(e) motion when the party simply "regurgitate[d] his previous arguments"); *see also Gascho*, 918 F. Supp. 2d at 714 ("Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided." (citation omitted)).Nonetheless, the Court will endeavor to address the merits of his Motion, and for the reasons that follow, it concludes that Plaintiff has not shown it committed a clear error of law. First, according to Defendant Garrett, Plaintiff's argument is that the constitutional inquiry for deliberate indifference under the Eighth Amendment should stop at whether a defendant "actually knew of the substantial risk of serious harm faced by a plaintiff." (*Id*. at 2–3 (quoting Doc. No. 112-1 at 7)). This is a fair reading of Plaintiff's argument at the cited part of Plaintiff's brief, although it is curious that Plaintiff would make such an argument; the argument (focused as it is on the defendant's *actual* knowledge) suggests that the test indeed is a subjective one, and yet, as the Court will discuss in more detail below, Plaintiff's overarching argument is really to the effect that the Court *erred* in applying a subjective standard.

The reality is that Plaintiff displays a clear confusion between a subjective standard and an objective standard. Plaintiff's argument here is, in full:

> Defendant Garrett actually knew of the substantial risk of serious harm faced by Mr. Loyde because Mr. Loyde told him specifically that he had a "PREA situation involving myself and Kolesnikoff." This complaint is serious and does not require one to drawn [sic] an inference from subtle facts.

(Doc. No. 112-1 at 7). The argument here is that Defendant Garrett had subjective knowledge of a substantial risk of harm[3] because he was told that Plaintiff "had a PREA situation," irrespective of whether he actually drew an inference of harm from what he was told. (*Id*.).The argument is nonsensical. The argument is that Plaintiff actually had *subjective* knowledge because he was told something that (supposedly) made it *objectively* clear that there was a substantial risk of harm; the argument entirely blurs the crucial distinction between objective and subjective knowledge. True, subjective knowledge of circumstances in some cases can be inferred from facts from which reasonable (objective) observer would infer those circumstances. But this truism does not help Plaintiff, because he specifically denies that any such inference "must actually be drawn" in order to establish subjective knowledge (*id*. at 5 (stating that the "alternative view" under *Farmer* is that "this language only applies" in some instances), and he has failed to counter the Court's explanation as to why such an inference should not be drawn in this particular case—*i.e.*, the Court's explanation as to why specific evidence in this case shows that Defendant Garrett did *not* draw an inference of a substantial risk to Plaintiff even if it could be said that he objective *should* have drawn such an inference.[4] Here, it is *Plaintiff* who is committing clear error (in logical reasoning).(Below, the Court returns briefly to Plaintiff's line of argument here as it relates to Plaintiff's misguided interpretation of *Farmer*).

---

[3] Elsewhere, confusingly enough, Plaintiff seems to argue that mere "actual *notice*" (an objective concept) is enough (Doc. No. 112-1 at 5–6, 9 (emphasis added)), which suggests that actual knowledge (a subjective concept) is not required and not necessarily even relevant.

[4] It is debatable that Defendant Garrett objectively should have drawn such an inference based on the limited information that he had. True, he may well have been negligent and derelict in his duty in not following up to ask for additional information, but based on the very limited information he did have, a substantial risk of harm very arguably was not objectively apparent.

Returning to Defendant's argument, Defendant Garrett further states that "[t]he distinction Plaintiff attempts to make with [ ]his argument simply does not exist." (Doc. No. 113 at 3). Defendant Garrett does not elaborate on "[t]he distinction" he references in his Response. (*Id*.). But Defendant Garrett seems to suggest that Plaintiff is arguing that an objective, rather than a subjective, standard for evaluating deliberate indifference is proper because, according to Defendant Garrett, "the Supreme Court [in *Farmer*] rejected the exact type of analysis Plaintiff proffers." (*Id*. (citing *Farmer*, 511 U.S. 837 ("We reject petitioner's invitation to adopt an objective test for [the subjective prong of] deliberate indifference."))). Defendant Garrett then recites the standard for evaluating deliberate indifference based on his reading of *Farmer*, which he states requires proof of a subjective component that consists of two parts: "'the official must both be *aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and he must also *draw the inference*' and 'then disregarded that risk.'" (*Id*. (quoting *Farmer*, 511 U.S. at 837) (emphasis added)). In addition, Defendant Garrett counters Plaintiff's argument that the Court should have denied Defendant Garret's motion for summary judgment merely because Defendant Garrett had "notice of a risk of harm." (*Id*.). The Court agrees with Defendant Garrett's recitation of *Farmer*'s standards, and the Court concludes that Plaintiff's position that the Court applied the "wrong legal standard" is unpersuasive because his reading of *Farmer* is flawed for several reasons. (Doc. No. 112-1 at 3). First, this Court does not read *Farmer*'s language—that a prison official "'must also draw the inference'"—as offering "two different interpretations" for evaluating deliberate indifference, as Plaintiff claims. (*Id*. at 5 (quoting *Farmer*, 511 U.S. at 837)). According to Plaintiff, "an alternative view is that this language only applies to whether the information known by the prison official was sufficient to demonstrate that a substantial risk of serious harm existed." (*Id*.). Based on this alternative view, which Plaintiff

states that this Court did not take, "a plaintiff need only prove that the prison official had actual notice of a risk[,] not that the prison official believed the risk would manifest into some actual harm in the future." (*Id*. at 5–6). Plaintiff, therefore, seems to suggest that, based on its reading of *Farmer*, an inmate does not always need to prove that a prison official "must also draw the inference" of a substantial risk of harm. (*Id*. at 5 (stating that "an alternative view is that *this* language *only* applies to whether the information known by the prison official was sufficient to demonstrate that a substantial risk of serious harm existed") (emphasis added)). *Farmer*'s language, however, is unambiguous. The Court stated: "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). The Court in *Farmer* did not set forth any "alternative view" in applying this standard. (Doc. No. 112 at 5–6). And Plaintiff does not otherwise provide a citation to *Farmer*, or any other authority, showing that the Supreme Court espoused these "two different interpretations" or "an alternative view" for evaluating deliberate indifference. (*Id*.).

In addition, Plaintiff's contention that he "need only prove that the prison official had *actual* notice of a risk [of serious harm]" further shows that he misapprehends *Farmer*. (Doc. No. 112-1 at 5–6 (emphasis added)). His position is akin to the argument that the petitioner advanced in *Farmer* and that the Court in *Farmer* rejected. (*Id*.); *Farmer*, 511 U.S. at 839 (rejecting "Petitioner's purely objective test for deliberate indifference"). The petitioner in *Farmer* argued that the Court should apply its test for deliberate indifference that it adopted in *Canton v. Harris*, 489 U.S. 378 (1989). 511 U.S. at 840. But the Court in *Farmer* stated that the deliberate-indifference test it applied in *Canton* "is not an appropriate test for determining the liability of prison officials under the Eighth Amendment" because a test premised on "'actual or constructive

notice,'" it explained, "would be hard to describe . . . as anything but objective." *Id*.[5] To the extent, therefore, that Plaintiff reads *Farmer* as offering "an alternative view"—one that requires him to "only prove that the prison official had actual notice of a risk" of harm—that reading is inapposite to the standards that the Court clearly identified in *Farmer*. (Doc. 112-1 at 5–6); *see Farmer*, 511 U.S. at 837 ("We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official . . . must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Plaintiff also appears to read *Farmer* as rejecting a subjective test for evaluating deliberate indifference, stating "the Supreme Court was addressing the concern that a subjective test would allow a prison official to avoid liability by merely ignoring 'obvious dangers to inmates.'" (Doc. 112-1 at 6 (quoting *Farmer*, 511 U.S. at 842)). But again, the *Farmer* Court squarely rejected the petitioner's invitation to adopt an objective test for evaluating deliberate indifference. *Farmer*, 511 U.S. at 837. And although the Court did address whether a subjective test would allow a prison official to avoid liability, it was responding to—and ultimately rejected—the petitioner's argument. *Id*. at 843 ("We are [not] persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates.").

Aside from Plaintiff's misreading of *Farmer*, Plaintiff's statement that the Court erred because it examined Defendant Garrett's belief as to whether "any harm would actually befall"

---

[5] The Court in *Farmer* stated that, in *Canton*, it adopted an "'obvious[ness]'" test when determining whether a municipality, not prison officials, could be held liable under 42 U.S.C. § 1983 for "'show[ing] deliberate indifference[.]'" 511 U.S. at 840–41 (quoting *Canton*, 489 U.S. at 389, 396). *Canton*'s deliberate-indifference test is "purely objective," *Whitworth v. CoreCivic, Inc.*, No. 3:17-cv-01121, 2019 WL 1427934, at *16 (M.D. Tenn. Mar. 29, 2019), and the Court in *Farmer* explained that applying its test in *Canton* to determine whether *individuals* are deliberately indifferent would be inappropriate. *Id*. at 841 ("*Canton*'s objective standard . . . is not an appropriate test for determining liability of prison officials under the Eighth Amendment.").

Plaintiff is simply incorrect, and he mischaracterizes the Court's ruling. (Doc. No. 112-1 at 3–4). According to Plaintiff, "*Farmer* made clear" that he "'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" (*Id*. at 6 (quoting *Farmer*, 511 U.S. at 842)). True, the Court in *Farmer* did specify that a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate" and that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. at 842. But this Court, in analyzing whether Defendant Garrett was subjectively aware of the risk of harm to Plaintiff, did not examine whether Defendant Garrett believed that harm "actually would befall" Plaintiff, as he claims. (Doc. No. 112-1 at 3–4, 6). Instead, the Court correctly analyzed, based on the record before it, whether Defendant Garrett "actually dr[e]w the inference that" Plaintiff faced a risk of substantial harm. (Doc. No. 109 at 11). The standard this Court applied is therefore consistent with *Farmer*, in which the Court explained that a prison official "must also draw the inference" that a substantial risk of harm exists. 511 U.S. at 837.

For all of these reasons, Plaintiff has not shown he is entitled to relief under Rule 59(e).

B.  <u>28 U.S.C. § 1292(b)</u>

Plaintiff, in the alternative, asks the Court for permission to file an interlocutory appeal under 28 U.S.C. § 1292(b). (Doc. No. 112-1 at 8). In his response to the Motion, Defendant Garrett does not respond to Plaintiff's request for certification. (*See* Doc. No. 113).

Ordinarily, an appealing party must "raise all claims of error in a single appeal following final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). When, as here, a court disposes of fewer than all parties or claims, an order is non-appealable

absent certification for an interlocutory appeal. *William B. Tanner Co. v. United States*, 575 F.2d 101, 102 (6th Cir. 1978). Title 28 of U.S.C. § 1292(b), however, provides an exception to this rule. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.* 29 F. Supp. 2d 825, 831 (N.D. Ohio 1998) ("Interlocutory appeals under § 1292(b) are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule."). A request under "§ 1292(b) should be sparingly granted and then only in exceptional cases." *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993) (citation omitted). To receive certification under § 1292(b), a movant must show that "extraordinary circumstances exist warranting an interlocutory appeal." *Alexander v. Provident Life & Acc. Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. 1999). The movant can show extraordinary circumstances by satisfying the following criteria: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists; *and* (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

Plaintiff acknowledges that certification under § 1292(b) "'is granted sparingly,'" but he insists that, based on the above factors, an immediate appeal is warranted. (Doc. No. 112-1 at 8 (quoting *Kraus v. Bd. of Cnty. Road Comm'r*, 364 F.2d 919, 922 (6th Cir. 1966))). As to the first criterion, Plaintiff states that a controlling issue of law exists "specifically [regarding] the interpretation of the Supreme Court's holding in *Farmer*." (Doc. No. 112-1 at 9). Plaintiff does not elaborate on his statement in this portion of his Motion. (*See id*.). But even assuming he has established that a controlling question of law exists, he fails to satisfy the remaining criteria under § 1292(b).

Plaintiff has not shown "there are substantial grounds for differences of opinions regarding" *Farmer*. (Doc. No. 112-1 at 9). "This factor requires a difference of opinion regarding

the law, not a difference of opinion as to how the law is applied[,]" *Patrick v. A.K. Steel Corp.*, No. 1:05-cv-000681, 2008 WL 11351555, at *2 (S.D. Ohio May 29, 2008) (citation omitted), and it is satisfied when "a difference of opinion exists within the controlling circuit" or when "the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (internal quotation marks and citation omitted). Plaintiff has not shown substantial difference of opinion exists among the courts within this circuit regarding "the interpretation of the Supreme Court's holding in *Farmer*." (Doc. No. 112 at 9).[6] As already stated, the legal standards set forth in *Farmer* are unambiguous, and the Sixth Circuit has routinely relied on them in addressing prisoners' failure-to-protect claims. *See, e.g.*, *Zakora v. Chrisman*, 44 F.4th 452, 472 (6th Cir. 2022) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Farmer*, 511 U.S. at 848)); *Rhodes v. Mich.*, 10 F.4th 665, 674–75 (6th Cir. 2021); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corrs. Corp.*, 102 F.3d 810, 815 (6th Cir. 1996).

Plaintiff also fails to satisfy the final criterion under § 1292(b)—whether an immediate appeal may materially advance the ultimate termination of the litigation. *In re City of Memphis*, 293 F.3d at 350. An interlocutory appeal would materially advance the litigation if it would save "substantial judicial resources." *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 884, 852 (W.D. Tenn. 2010) (internal quotation marks and citation omitted). Plaintiff states that an

---

[6] To the extent that Plaintiff disagrees with how the Court applied the law in *Farmer* to the facts of his case, "§ 1292(b) is not appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts." *Howe v. City of Akron*, 789 F. Supp. 2d 786, 810 (N.D. Ohio 2010) (citation omitted).

immediate "appeal will serve the interests of the parties due to the exceptional circumstances currently present in this case." (Doc. No. 112-1 at 9). The "exceptional circumstances," according to Plaintiff, involve the pending bankruptcy of Defendant Corizon, which Plaintiff states "will likely take considerable time to resolve." (*Id*.). But how an immediate appeal may materially advance the ultimate termination of the litigation is unclear from Plaintiff's statements. (*See id*. at 8–9). In any event, an interlocutory appeal would not materially advance the termination of this case because, even if the Sixth Circuit returns a ruling in Plaintiff's favor, this Court would still need to resolve the other claims against the remaining Defendants. (*See* Doc. No. 1 (Complaint (asserting various claims against Defendants, aside from failure to protect))); *see Deane v. Quest Diagnostics, Inc.*, No. 1:18-CV-880, 2019 WL 13162436, at *2 (S.D. Ohio Sept. 26, 2019) (denying request for certification under § 1292(b) because "[i]t is not in the interest of judicial economy to send claims to the appellate court that may become of no consequence to the action litigated and could actually delay the action"). To conclude, Plaintiff has not shown extraordinary circumstances exist under 28 U.S.C. § 1292(b), and the Court, therefore, will not take the extraordinary action of certifying an interlocutory appeal.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Alter or Amend Judgment (Doc. No. 112) and his alternative request to file an appeal under 28 U.S.C. § 1292(b) are **DENIED.**

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE